## A97A0466, A97A0467. ST. PAUL FIRE & MARINE INSURANCE COMPANY v. BARGE et al.; and vice versa.

(483 SE2d 883)

BLACKBURN, Judge.

In Case No. A97A0466, St. Paul Fire & Marine Insurance Company (St. Paul) appeals an order of the trial court staying arbitration proceedings with respect to certain issues. In Case No. A97A0467, John M. Barge and Olivia L. Barge appeal an earlier order of the trial court requiring arbitration of other issues.

St. Paul issued payment and performance surety bonds in favor of Barge-Wagener, Inc. (BWI) in connection with several construction projects undertaken by BWI. BWI's CEO, John M. Barge, and his wife, Olivia L. Barge, executed an indemnity agreement pursuant to which they agreed to indemnify St. Paul for any losses it sustained under the bonds.

After experiencing construction difficulties, BWI sought funding from St. Paul to complete the bonded projects. On May 18, 1994, St. Paul, BWI, the Barges, and others entered into an agreement (the May 1994 agreement) in which St. Paul agreed to advance funds to BWI for completion of the projects. The Barges also assigned to St. Paul their interest in certain federal and state tax refunds due them. The agreement required that all disputes arising out of or in connection with the agreement be resolved through arbitration.

After execution of the May 1994 agreement, a dispute arose between the parties as to whether certain tax refunds received by the Barges should be paid to St. Paul. St. Paul initiated arbitration proceedings over this dispute before the American Arbitration Association. The Barges filed an action in Fulton County Superior Court seeking a stay of the arbitration proceedings and a declaratory judgment that arbitration was not required. They also sought a declaration that any lien or security interest in the tax refunds purportedly granted by Ms. Barge was void because St. Paul had violated the Equal Credit Opportunity Act (ECOA) in requiring Ms. Barge to be a party to the agreement. The Barges later amended the complaint to seek a declaration that the original indemnity agreement and the May 1994 agreement were not enforceable against Ms. Barge due to the alleged ECOA violations.

St. Paul filed its answer on March 31, 1995, and asserted a two-count counterclaim against the Barges. The first count alleged that the Barges had breached the May 1994 agreement by failing to pay St. Paul the tax refunds they had received. Count 2 alleged that the Barges were liable to St. Paul for amounts advanced pursuant to the May 1994 agreement. This count alleged that more than $11,800,000 had already been advanced, and that it was anticipated that additional advances would cause the Barges' liability to exceed $20 mil-

lion. The counterclaim recited that it was filed subject to and without waiver of St. Paul's claim that all disputes were arbitrable.

On September 8, 1995, the court entered an order finding that the tax refund dispute was subject to arbitration. In connection with this ruling, the court rejected Ms. Barge's argument that she was not obligated under the agreement due to St. Paul's alleged ECOA violations. The Barges filed a notice of direct appeal of this order, and St. Paul moved to dismiss the appeal on the grounds that the order was not directly appealable since St. Paul's counterclaims remained pending. The trial court agreed and dismissed the notice of appeal.

On May 17, 1996, St. Paul sought to amend its arbitration demand to bring the $20 million claim within the arbitration proceedings. The Barges then filed a renewed motion in superior court to stay the arbitration proceedings. On June 10, 1996, the court entered an order finding that St. Paul had waived its right to arbitrate the $20 million claim and ordering the arbitrators not to hear such claim.

### Case No. A97A0466

1. In several enumerations, St. Paul contends the court erred in holding that it waived its right to arbitrate the $20 million claim. "An agreement to arbitrate is waived by any action of a party which is inconsistent with the right of arbitration." (Citation and punctuation omitted.) *Tillman Group v. Keith*, 201 Ga. App. 680, 681 (2) (411 SE2d 794) (1991). The trial court held that St. Paul waived its right to require arbitration of the $20 million claim by seeking to dismiss the Barges' notice of direct appeal due to the pendency of St. Paul's counterclaims. The court found that "it was inconsistent with its right to arbitrate the 20 million dollar claim for [St. Paul] to use the fact that it had not demanded arbitration on the 20 million dollar claim as a means to dismiss [the Barges'] appeal."

The trial court erred in finding that St. Paul's actions in seeking dismissal of the notice of appeal were inconsistent with its right to arbitrate the $20 million claim. As an initial matter, direct appeal of the court's September 8, 1995, order would have been inappropriate regardless of whether St. Paul had demanded arbitration of the $20 million claim. An order granting or denying a motion to stay judicial proceedings pending arbitration is an interlocutory order and is reviewable only by application. See *Phillips Constr. Co. v. Cowart Iron Works*, 250 Ga. 488 (299 SE2d 538) (1983); *McAllaster v. Merrill Lynch &c.*, 212 Ga. App. 697 (443 SE2d 9) (1994); *Pace Constr. Corp. v. Northpark Assoc.*, 215 Ga. App. 438 (450 SE2d 828) (1994). Whether or not St. Paul had demanded arbitration of the $20 million claim is irrelevant to the question of whether the court's order was directly appealable. Thus, St. Paul cannot be said to have "used" the

fact that it had not demanded arbitration of the $20 million claim to have the notice of appeal dismissed.

Furthermore, nothing St. Paul *did* in seeking dismissal of the notice of appeal was inconsistent with its right to arbitrate the $20 million claim. St. Paul argued correctly that direct appeal was inappropriate because of the pendency of its counterclaims in superior court. St. Paul also noted that it had not yet demanded arbitration of the $20 million claim; that the Barges were likely to resist any attempt to arbitrate such claim and that St. Paul would thus be forced to seek an order compelling arbitration; and that circumstances could change and St. Paul could decide at a future date to forego arbitration and have such claim determined in superior court. These statements are not inconsistent with the right to arbitrate such claim, but merely note that no action has been taken other than the filing of the counterclaim.

The fact that St. Paul did not demand arbitration of the $20 million claim at the time it filed its counterclaim is also not inconsistent with its right to arbitrate such claim. As the Barges admit in their appellate brief, the $20 million claim had not fully matured at the time St. Paul filed its counterclaim. St. Paul did not demand arbitration on its claim for amounts due under the May 1994 agreement because it had not yet fully advanced all funds due thereunder, and the full amount of the Barges' liability could not be determined. Nevertheless, St. Paul was compelled to file the counterclaim to protect itself in the event it was deemed to be a compulsory counterclaim. In the counterclaim itself, St. Paul stated that it was being filed subject to and without waiver of its right to arbitration.

Other than the mere defensive filing of the counterclaim, St. Paul took no action whatsoever to litigate the $20 million claim in superior court. After St. Paul had advanced all funds due under the May 1994 agreement and the full amount of the Barges' liability under such agreement became established, St. Paul sought to amend its demand for arbitration to include the $20 million claim. In their brief before the trial court, after St. Paul sought to amend its arbitration demand, the Barges themselves acknowledged that "St. Paul has consistently argued that all of the disputes involved in the May, 1994 agreements must be arbitrated." As St. Paul's actions were not inconsistent with its right to arbitrate the $20 million claim, the court erred in finding that St. Paul waived its right to arbitrate such claim.

2. The court's order of June 10, 1996, was broadly worded, ordering the arbitrators "not to hear the new claims asserted in Defendant's Third Amendment to Demand for Arbitration." However, St. Paul's third amendment to its arbitration demand was not limited to adding the $20 million claim. The amendment also requested that the arbitrators grant additional relief with respect to a separate

claim already pending before the arbitrators as a result of an earlier amendment.[1] St. Paul appeals the trial court's order to the extent that it purports to bar the arbitrators from considering these additional items of relief not related to the $20 million claim.

We find that the trial court's order was clearly intended to apply only to the $20 million claim, and was not intended to prevent the arbitrators from considering the other items of relief requested in the third amendment. Furthermore, if the court intended to preclude the arbitrators from considering such other items, it erred in so doing. These items were merely minor amendments to the relief requested in a separate claim already pending before the arbitrators, and there is no evidence whatsoever in the record that St. Paul waived its right to arbitrate such issues.

### Case No. A97A0467

3. The Barges contend the trial court erred in holding that a violation of the ECOA could not be asserted by Ms. Barge as a defense to her liability. The ECOA prohibits creditors from discriminating against applicants for credit on the basis of sex or marital status. 15 USC § 1691. Regulations promulgated thereunder provide that "[e]xcept as provided in this paragraph, a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 CFR § 202.7 (d) (1). The Barges contend that St. Paul violated the ECOA by requiring Ms. Barge to be a party to the indemnity agreement and May 1994 agreement, although she had no interest in BWI.

However, this Court has expressly held that "[a]n alleged violation of 15 USC § 1691 et seq. and 12 CFR 202.7 (d) (1) cannot be asserted as an affirmative defense to void a guaranty, but only as a compulsory counterclaim." *Rodgers v. First Union Nat. Bank*, 220 Ga. App. 821, 822 (1) (a) (470 SE2d 246) (1996). At the time the court issued its order, Ms. Barge had not asserted a claim against St. Paul for violation of the ECOA, but merely sought a declaration that her obligations under the indemnity agreement and May 1994 agreement were unenforceable. The trial court did not err in holding that any alleged violation of the ECOA was not a defense to Ms. Barge's

---

[1] In this separate claim, St. Paul sought to recover monies allegedly improperly paid to or for the benefit of the Barges by certain real estate partnerships. In the third amendment, St. Paul asked for interest, attorney fees and arbitration costs with respect to this claim, and for an order requiring the Barges to pay over any such funds received by them after the date of the arbitration award.

liability, and that she was thus compelled to arbitrate her disputes.

4. The issue of an alleged ECOA violation was before the trial court only in connection with the Barges' motion to stay the tax refund arbitration proceedings and St. Paul's motion to stay the superior court proceedings pending arbitration. The Barges had argued that, if the May 1994 agreement was unenforceable against Ms. Barge, then she could not be compelled to arbitration because she would not be party to a binding agreement to arbitrate. Therefore, the court had to consider the ECOA defense in order to rule on the arbitration motions. As we have affirmed the court's holding that Ms. Barge is obligated under the agreement notwithstanding any alleged ECOA violation, and is thus subject to arbitration, it is unnecessary for us to review the court's alternative finding that St. Paul did not in fact violate the ECOA.[2]

5. The Barges' contention that the court erred in finding that the tax refund dispute was subject to arbitration is without merit. The May 1994 agreement expressly provides that "[a]ny and all disputes arising out of or in connection with execution or performance of this Agreement, including any breach thereof, shall be resolved through Arbitration." Paragraph 3 (B) of the agreement states that the Barges assign all of their right, title and interest in the tax refunds to St. Paul, and requires that all such funds be paid to St. Paul. Disputes over the performance of this provision are clearly subject to arbitration.

The Barges' argument that the arbitration provision violates Georgia public policy because it is too broad is without merit. Each of the cases cited by the Barges was decided prior to the adoption of the Georgia Arbitration Code, OCGA § 9-9-1 et seq., which established a clear public policy in favor of arbitration. See OCGA § 9-9-3 ("a provision in a written contract to submit any controversy thereafter arising to arbitration is enforceable").

*Judgment affirmed in Case No. A97A0467. Judgment reversed in Case No. A97A0466. Pope, P. J., and Johnson, J., concur.*

---

[2] Although not discussed by the parties in their appellate briefs, we note that, following the trial court's order, the Barges amended their complaint to add a claim for damages against St. Paul for violation of the ECOA. As the issue has not been raised by the parties on appeal, we do not express any opinion as to the possible preclusive effect on such claim of the trial court's finding that St. Paul did not violate the ECOA. However, it does not appear that the trial court intended such finding to be a final adjudication of the issue or a partial grant of summary judgment to St. Paul on the Barges' declaratory judgment action. If that had been the case, the trial court presumably would not have dismissed the Barges' notice of direct appeal. Rather, it appears the court made the finding merely as an alternative ground for its ruling that the parties' disputes were subject to arbitration.

DECIDED FEBRUARY 27, 1997 —
RECONSIDERATION DENIED MARCH 12, 1997 — ■■■■■■■■■■■

*Wasson, Sours & Harris, Edward H. Wasson, Jr., W. Hensell Harris, Jr.*, for appellant.
*Schreeder, Wheeler & Flint, John A. Christy, Debbie A. Wilson*, for appellees.